THE HACKENSACK TRUST COMPANY, a body corporate, as substituted testamentary trustee under the last will and testament of Anna M. Knapp, deceased, complainant,

*v.*

ALICE M. DENNISTON et al., defendants.

[Decided July 20th, 1940.]

Mr. *Arthur Van Buskirk* (Mr. *William H. Wurts,* of counsel), for the complainant.

Mr. *Raymond C. Betsch,* for the defendant Arthur R. Storm.

Mr. *William M. McConnell,* for the defendants Alice M. Denniston et al.

Messrs. *Bleakly, Stockwell, Lewis & Zink,* for the defendants Helen D. Haight et al.

LEWIS, V. C.

This suit is brought by a substituted trustee for the construction of a will. Testatrix, Anna M. Knapp, died on January 11th, 1899, leaving a will executed four days previously. · The will provided that after the payment of some negligible bequests, the residue should be divided in four parts, each of the four parts to be held in trust to pay the income to each of her two nieces, Josephine R. Storm, and Hattie R. Malleson, since remarried to Joseph J. McKeown, a nephew, Rufus K. Storm, and grandniece, Helen D. Worrall, respectively. Each of these four trusts is created by a separate paragraph of the will and there are slight variations in the language used in each instance regarding the disposition of the remainders of the life estates upon the deaths of the life beneficiaries.

In the case of one of the nieces, Josephine R. Storm, the provision is:

"And from and immediately after the decease of her, my said niece, Josephine R. Storm, I give, devise and bequeath the principal of the said one fourth part or share to all and every the child or children which she, my said niece, may leave, and the lawful issue of any of them. And should my said niece, Josephine R. Storm, die without issue, I then direct that the principal of the said one fourth part or share shall merge into the general trust fund created from my residuary estate and the interest and income derived therefrom shall be paid over to the surviving residuary legatees share and share alike, or should any have previously died leaving issue, then to their issue."

In the case of the second niece, Hattie R. Malleson, since remarried to Joseph J. McKeown, the provision is as follows:

"And from and immediately after the decease of her, my said niece, Hattie R. Malleson, I give, devise and bequeath the principal of the said one fourth part or share to all and every the child or children, which she, my said niece, may leave, and the lawful issue of any of them, absolutely. And should my said niece, Hattie R. Malleson, die without issue, I then direct that the principal of the said one fourth part or share shall merge into the general trust fund created from my residuary estate and the interest and income derived therefrom shall be paid over to the surviving residuary legatees, share and share alike, or should any of the said residuary legatees have previously died leaving issue, then his or her portion to such child or children." (Paragraph sixth.)

In the case of the nephew, Rufus K. Storm, the provision is as follows:

"And from and immediately after the death of my said nephew, Rufus K. Storm, I give, devise and bequeath the principal of the said one fourth part or share of my said residuary estate to his issue and their issue absolutely, share and share alike; and should my said nephew, Rufus K. Storm, die without issue, I then direct that the principal of the said one fourth part or share shall merge into the general trust fund created by my said residuary estate and the interest and income derived therefrom shall be paid over to the surviving legatees of my residuary estate, share and share alike, or to their issue, should any of them have previously died leaving issue."

In the case of the grandniece, Helen D. Worrall, the provision is identical with that in the case of Mrs. Malleson (McKeown).

Paragraph eight of the will provides as follows:

"Eighth. At the death of all of the four residuary legatees, to wit: Rufus K. Storm, Josephine R. Storm, Hattie R. Malleson, and Helen D. Worrall, I give, devise and bequeath unto the lawful issue of the last surviving residuary legatee all the principal of the trust fund remaining undistributed."

Annie L. Mattison declined to act as trustee, and in accordance with the will, Rufus K. Storm was substituted in her place and continued to function as trustee until July 2d, 1924, when The Hackensack Trust Company, the present complainant, was substituted in his place. Josephine R. Storm, one of the life beneficiaries, died on February 7th, 1923, without issue. Hattie R. McKeown (formerly Hattie R. Malleson), another life beneficiary, died on March 8th, 1938, leaving one child, Alice M. Denniston, who herself is the mother of three infant children. The other two life beneficiaries are living, Rufus K. Storm having one living son, Arthur R. Storm, who himself has three living infant children. The remaining life beneficiary, Helen D. Worrall, now Mrs. Clarence Haight, has three living children, a fourth having died in infancy. One of her three children is an unmarried minor and the other two children, both daughters, are married and one of them has two infant children and

the other has three infant children. All the foregoing are before the court as parties, the infants all being represented by guardians *ad litem.*

At the time of the death of Josephine R. Storm in 1923 and until after the substitution of The Hackensack Trust Company in 1924 as trustee, only about one-half of the estate left by Mrs. Knapp had been reduced to cash, but the balance came into possession of the new trustee within a year or so afterwards.

Following the death of Josephine R. Storm, Rufus K. Storm, as trustee, allocated one-third of such part of the Josephine R. Storm trust fund as had come into his possession to each of the other three trust funds and paid the increased one-third income to each of the life beneficiaries. The Hackensack Trust Company followed the same practice and made a similar allocation upon receipt of the second half of the Josephine R. Storm trust fund.

Accounts were filed in the Bergen County Orphans' Court, first by Rufus K. Storm and later by The Hackensack Trust Company, setting forth this procedure, and the accounts were approved by that court as filed. No notice was given that the accounts sought a construction of the will in the Orphans Court, nor were any of the infants interested in the estates cited to appear, nor were they represented on the accountings by guardians *ad litem.*

One of the trust funds, namely that for the benefit of Mrs. Malleson (McKeown), having terminated, a distribution of the *corpus* is now necessary. The Trust Company asks for a construction of the will as to whom the distribution of *corpus* should be made. The question is whether it should go to Mrs. Denniston, the sole child of the life beneficiary, or whether she and each of her three minor children should receive one-fourth thereof. Another question is as to whether she alone or sharing with her three children should receive one-third of the *corpus* of the trust fund of which Josephine R. Storm was the life beneficiary.

The determination of these questions depends on the intent of the testatrix as shown by the language of the will. Unfortunately, the will is somewhat ambiguous in its language.

It was drawn in long hand and was executed four days before testatrix' death and possibly was drawn somewhat hastily. Some internal evidence of this is found in that what might have been intended as identical provisions in disposing of the remainders of the various life estates, in the will as executed, there are slight verbal variations. In addition, the will makes use of such inapt expressions as "the general trust fund created by the residuary estate," and "the last surviving residuary legatee," which do not exactly fit the pattern of the will.

In interpreting the will, the intention is to be determined by reading the will as a whole (*Trustees of Princeton University* v. *Wilson, 78 N. J. Eq. 1; Peer* v. *Jenkins, 102 N. J. Eq. 235*), which is to be ascertained by the language used (*Tzeses* v. *Tenez Construction Co., 97 N. J. Eq. 501*), all the words to be given effect as far as possible (*Kutschinski* v. *Sheffer, 109 N. J. Eq. 659*). It is, of course, not the function of the court to rewrite the will (*Griscom* v. *Evens, 40 N. J. Law 402*).

The relevant provision as to the disposition of the Malleson (McKeown) trust upon her death is contained in paragraph six hereinbefore quoted and reads as follows:

"I give, devise and bequeath the principal of the said one-fourth part or share to all and every the child or children, which she, my said niece, may leave, and the lawful issue of any of them, absolutely."

It will be noted that there is no express provision for any distribution to be made to any grandchildren of Mrs. Malleson, whose parent may have predeceased Mrs. Malleson. The fact that there actually were no such grandchildren does not affect the argument, since the will is to be construed not in the light of subsequent events, but in that of the intention of the testatrix at the time the will was executed. The remainder is given "to all and every the child or children which she, my said niece, may leave, and the lawful issue of any of them, absolutely." The determining factor is as to whether the word "them" refers to all the children which Mrs. Malleson might have or only to such of the children which she might have who should, in fact, survive her. In my opinion, a clear light is thrown upon the intention behind the language used

by the succeeding clause, which provides, "Should my said niece die without issue," the *corpus* shall merge into the general trust fund. If the prior clause requires an actual living son or daughter of Mrs. Malleson to survive her before any of her descendants could take the *corpus,* the word "issue" in the second clause just quoted must necessarily be limited so as to mean surviving child. This requires a strained construction of the word "issue." In my opinion, the antecedent of the word "them" is not surviving child but refers to any child, and it was the intention of the testatrix to provide by this clause that the child of deceased children of Mrs. Malleson should take in the place of the deceased parents. In other words, the construction to be given the language used from the entire paragraph is that any and all descendants of Mrs. Malleson should take *per stirpes.* To hold otherwise would require that the Malleson trust fund would go into the general trust in the absence of sons or daughters actually surviving her. This result will be reached if the word "and" in the clause "child or children which she, my said niece, may leave, and the lawful issue of any of them," be changed to read "or." Such a construction of the word "and" so as to mean the same as the word "or" is well recognized. In *Sadler* v. *Bergstrom, 113 N. J. Eq. 567,* the court says, "The word 'and' has so frequently been construed as 'or,' and *vice versa,* where it is evident that such was testator's intent, as to need no citation of cases." To the same effect is *Shimer* v. *Shimer's Executors, 30 N. J. Eq. 300.*

The construction to be given this clause is therefore as though it read "that upon the death of Mrs. Malleson the fund is to be distributed among her children who may survive her and the issue of any previously deceased children, all the descendants of Mrs. Malleson to take *per stirpes."* The improbability that testatrix intended that inheritance should be *per capita,* and should be limited to surviving children and issue thereof, and that children should share equally with a living parent, is demonstrated by the application of the principle to the Worrall trust, where the language is identical with that of the Malleson trust. If Mrs. Worrall were to die at the present time, this principle would give a

one-eighth interest to the unmarried daughter, to each of her two married sisters, and to two childen of one of the married sisters and three children of the other married sister. If the mother of these three children should predecease Mrs. Worrall, the three children would receive nothing and each of the others would receive one-fifth.

While the testatrix had the undoubted right to provide such a result, its unfairness forbids me to find that such was her intention in the absence of language necessarily requiring me to do so.

The remaining question is as to the construction to be given the paragraph disposing of the Josephine R. Storm trust upon her death, and the ultimate disposition of it upon the death of the last of the four life beneficiaries. The trustee has allocated one-third of this trust to each of the three remaining trusts. It is contended on behalf of Mrs. Denniston that this one-third portion of the Josephine R. Storm trust has become a part of the *corpus* of the Malleson trust and is accordingly to be distributed as part of it. It is, on the other hand, contended that the allocation among the three remaining trusts was improper and that the Josephine R. Storm *corpus* should be restored as a separate entity; that the income therefrom should be paid to the two now surviving life beneficiaries and that ultimately, on the death of these two, the *corpus* is to be distributed to the lawful issue of the last life beneficiary to die. In my opinion, the latter contentions must prevail.

Here again the language of the will is inapt and somewhat ambiguous, but taking the will as a whole, I think a clear intent appears. The provision is that on the death of Josephine R. Storm without issue, the *corpus* "shall merge into the general trust fund created from my residuary estate and the interest and income derived therefrom shall be paid over to the surviving residuary legatees, share and share alike, or should any have previously died leaving issue, then to their issue." Paragraph eight provides that on the death of all the four residuary legatees, Rufus K. Storm, Josephine R. Storm, Hattie R. Malleson and Helen D. Worrall, "I give, devise and bequeath unto the lawful issue of the last surviv-

ing residuary legatee all the principal of the trust fund remaining undistributed." There is an apparent ambiguity here. The provision is that the share shall merge into the general trust fund created from the residuary estate and final distribution is to be made of "all the principal of the trust fund remaining undistributed." The difficulty is that nowhere else in the will is a general trust fund mentioned and, therefore, the use of the word "merge" is inappropriate, to say the least. But a consideration of the entire will leaves no doubt as to the purpose of the testatrix. Each of the four trust funds created upon the death of the life beneficiary is to be distributed to the children or issue if the beneficiary leave such. If any one of the life beneficiaries dies without any issue, except for the two clauses just quoted, there is no distribution whatever of the *corpus*. It clearly appears that the testatrix intended that in such a case, the life beneficiaries of the other trust funds should thereupon receive the income. It further clearly appears that upon the death of the entire four life beneficiaries, the *corpus* of such a fund should be distributed among the issue of the last survivor. To hold otherwise would render these clauses of the will absolutely meaningless and would require their complete excision from the will. It also clearly appears that, for some reason, in this particular instance the issue of anyone of the four original life beneficiaries who died subsequently to Josephine R. Storm is expressly excluded from any participation in the income from the *corpus* of her trust fund. From these conclusions it necessarily follows that Mrs. Denniston has no interest in either the *corpus* or the income of the Josephine R. Storm trust fund.

It is contended by some of the parties, and particularly on behalf of Mrs. Denniston, that since she is willing to concede that her three children shall share equally with her in the *corpus* of the Malleson trust and consents to a decree construing the will to so provide, that there is no question to be decided by the court and the bill should be dismissed. This contention is unsound. The court cannot be ousted of jurisdiction to construe a will in a proper case such as is now before the court, by agreeing to a construction. In *Vrooman*

v. *Virgil, 81 N. J. Eq. 301* (at *p. 311*), the court said, "It is hardly necessary to say that this will cannot be construed with reference to the 'understanding in the family' of the testator after his decease in regard to its meaning." In addition, a precisely similar question of construction will sometimes in the future arise in the Worrall trust. The Worrall family are parties to this suit and both they and the trustee are entitled to a determination of the question.

As to the disposition of the *corpus* of the Josephine R. Storm trust, it is contended that the allocation of one-third thereof to the Malleson trust is final and that the apparent approval given to such allocation by a decree of the Orphans Court hereinbefore referred to renders the question *res judicata*. As heretofore pointed out, such a disposition was a violation of the will as construed hereby. This erroneous disposition should be rectified, unless this court is bound by the accounting in the Orphans Court.

In the absence of notice that anything more than a settlement of accounts was to come before the Orphans Court, the approval by the Orphans Court of the improper division of the Josephine R. Storm *corpus* and allocation to each of the three other trusts is not binding upon persons who were not made parties and who were not properly represented by guardians *ad litem*. In *Adams* v. *Adams, 46 N. J. Eq. 298, 304,* the court says:

"A decree need not and would not be expected to follow a settlement. Notice of the settlement, therefore, cannot be considered to give notice of a proceeding not the natural sequence of the settlement and which may or may not be applied for or initiated. The better view is, that this proceeding, commenced by one party, must bring in all others interested as parties, which, in the absence of a prescribed notice, can only be done by reasonable actual notice to them."

To a like effect are *Stevens* v. *Dewey, 55 N. J. Eq. 232* and *In re Capraro, 116 N. J. Eq. 259.* No one has been injured during the past by the erroneous interpretation of the will, since the income has been paid to persons entitled to receive it up until the time of the death of Mrs. Malleson. The *corpus* can readily be re-assembled and the fund in the

future conducted as a separate trust fund to which may be added from time to time in the future such other increments as may possibly come into it, under the provisions of the Rufus K. Storm and Helen D. Worrall trusts, however unlikely such contingencies may be.

A decree will be advised in accordance with the foregoing opinion.